UNITED STATES DI STRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| L.W. and J.P., Individually and as | ) | |
| CO-GUARDIANS of JOHN DOE, | ) | |
| an incapacitated adult, | ) | |
| | ) | |
| Plaintiffs, | ) | CAUSE NO.: 1:21-cv-2397-JMS-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| ROMAN CATHOLIC ARCHDIOCESE | ) | |
| OF INDIANAPOLIS, INC. and | ) | |
| RONCALLI HIGH SCHOOL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, L.W. and J.P., Individually and as CO-GUARDIANS of JOHN DOE, an incapacitated adult, for their complaint for damages and jury demand against the Defendants, ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS, INC. ("Archdiocese") and RONCALLI HIGH SCHOOL, INC. ("Roncalli"), allege and say that:

## I. PRELIMINARY STATEMENT

Plaintiffs, L.W. and J.P. bring this action seeking redress for harms suffered due to their disabled son, Plaintiff JOHN DOE, being subjected to discrimination, bullying, abuse, harassment, and hazing, as a result of Defendants' intentional, knowing, deliberately indifferent, reckless and/or negligent acts and/or omissions. Defendants failed to implement policies, customs, and practices to address student-on-student discrimination, bullying, harassment, abuse, and hazing, and failed to prevent or stop it from occurring in the face of actual knowledge that it was occurring. Specifically, Defendants created, fostered, or permitted a hostile environment to exist in JOHN

DOE's school that deprived him of educational opportunities and benefits on the basis of his disability.

## II.    PARTIES, VENUE AND JURISDICTION

1.      JOHN DOE is an eighteen-year-old incapacitated adult male. JOHN DOE resides with his mother, Plaintiff L.W., in Greenwood, Indiana. JOHN DOE has Trisomy 21 or Down Syndrome and as a result has physical and mental impairments which substantially limit his functions in caring for himself. JOHN DOE's disability adversely affects his educational performance and he is eligible for special education and related services related to his disability. JOHN DOE is a "child with a disability" as defined by applicable federal law, including but not limited to 20 U.S.C. § 1401(3)(a); 34 CFR § 300.8. He takes prescription medication and receives ongoing medical management for Down Syndrome. At all relevant times, JOHN DOE, was a student and athlete of Roncalli. JOHN DOE was the equipment manager of the Roncalli football team during the relevant timeframe.

2.      Plaintiff L.W. is the biological mother and Co-Guardian of JOHN DOE. Plaintiffs L.W. and JOHN DOE are citizens of the State of Indiana and residents of the Southern District of Indiana, Indianapolis Division. Plaintiff J.P. is the biological father and Co-Guardian of JOHN DOE. Plaintiff J.P. is a citizen of the State of Florida and willingly submits to the jurisdiction of this Court. JOHN DOE's parents, Plaintiffs L.W. and J.P. are responsible for his medical expenses.

3.      The Archdiocese and Roncalli are non-profit domestic corporations organized and incorporated under the laws of Indiana with their principal places of business located in Indianapolis, Indiana. The Archdiocese and Roncalli receive federal financial assistance.

4.      This Court has personal jurisdiction over Plaintiff and Defendants and venue is proper in this Court.

5.     This Court has jurisdiction over Plaintiffs' claims arising under the Constitution or laws of the United States, specifically, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 12188.

6.     This Court has supplemental jurisdiction over Plaintiffs' state law negligence claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper pursuant to 28 U.S.C. § 1391, in that the Archdiocese and Roncalli are subject to personal jurisdiction in the Southern District of Indiana, the Archdiocese and Roncalli regularly conduct business activities within the Southern District of Indiana, and the events giving rise to the claims occurred in the Southern District of Indiana.

### III.     FACTUAL ALLEGATIONS

8.     Plaintiffs incorporate by reference all other allegations of their Complaint as if fully set forth here.

9.     For the 2019-2020 school year it was Roncalli's intention to create disciples of Jesus in the image of St. John XXIII (Angelo Cardinal Roncalli).[1] One stated purpose was for Roncalli graduates to honor and glorify God through: **DIGNITY—recognizing that every person is created in the image and likeness of God, having the utmost respect for life, and embracing a diverse world**.[2]

10.     During the relevant timeframe, Roncalli offered a "STARS-Special Education Services Program" for students with an intellectual or learning disability. The philosophy behind the program was "[a]ll students can succeed when provided with the right atmosphere to meet their

---

[1] 2019-2020 Roncalli Student Handbook
[2] *Id*.

needs. It is our job as teachers and parents to provide an atmosphere that will assist students to reach their potential and realize their God given talents."[3]

11.    The stated goals for the STARS and Life Academy program were, in part, to:

- Identify and meet the needs of individual students;
- Assist teachers to develop and monitor specific behavioral intervention plans;
- Educate staff, faculty, and student body on learning differences;
- Provide in-service opportunities for teachers regarding best practices, differentiation strategies and disability awareness.
- Provide STARS students with necessary skills to live an independent and productive life after high school; and
- Include STARS and Life Academy students in extracurricular activities/campus life.[4]

12.    For the 2019-2020 school year Roncalli had the following relevant policies in place:

a. **10.8 Student Chromebooks**

The program initiatives seek to . . . promote digital citizenship reflecting faith and Christian values. At no time shall the device be used for inappropriate or unlawful activities. School administration and faculty have rights to view the contents of the device; in addition, any student's Google account and browsing history can be accessed by administration and faculty.  In accordance with promoting Christian digital citizenship the school's content filtering will be in effect while the device is off campus. Inappropriate sites will be blocked and all sites visited will be logged. [V]iolations of the policies included in this document will be addressed by the Dean of Students, who will determine the proper course of action.

b. **11.1 Accidents**

Any . . . incident that involves injury or damage that occurs within school grounds or at a school sponsored activity must be reported immediately to the individual in charge of the class or event.

c. **11.3 Child Abuse Reporting**

In accordance with the Safe and Sacred policies of the archdiocese of Indianapolis and Indiana law, any report or suspicion of child abuse and/or neglect will be reported to the appropriate authorities for their investigation.

d. **13.0 Code of Conduct**

---

[3] https://www.roncalli.org/academics/stars
[4] *Id.*

Everyone at Roncalli is expected to show respect for themselves and those around them, as well as the material and physical surroundings which are provided. Each member of this school community has the right to grow and mature intellectually, physically, emotionally and spiritually. At the same time, each person has the responsibility to see that others' rights are respected and upheld. Language and behavior should contribute in a positive way to school life. Rules and regulations represent guidelines for behavior. It is impossible to write rules to cover all situations that may arise but the rules in existence are designed to enable all those at Roncalli to function harmoniously with each other. If everyone abides by the rules, we contribute to an environment in which persons can find experiences that will help them grow in meaningful ways. By breaking rules, a student infringes on another's rights, disrupts the community and often hurts him/herself in the process. If this happens, the offender must accept the consequences for what he/she did. At Roncalli, the consequences will take various forms, according to the degree of violation of the rules and of people's rights. Everyone makes mistakes. No one is perfect. The goal is that everyone learn from mistakes and thus becomes an individual who makes an even better contribution to the total school community.

### e. **13.1 Expectations**

Each student of a Catholic high school is to exemplify the highest behavior, that of being a Christian with all its implications. One of the essential purposes of a Roncalli education is the formation of character. The rules of the school, designed for the purpose and in the interest of good order, are exercised with discretion and justice. Roncalli does not hold itself responsible for student offenses committed outside its jurisdiction; yet any conduct that is detrimental to the reputation of the school or that binds the advancement and moral good of the students in general is sufficient cause for suspension or expulsion. Roncalli High School prides itself on being a welcoming, Christian community. As such the behavior of our students should model this welcoming spirit at all times. Language and/or behavior that is racist, sexist, homophobic or ethnically degrading is not acceptable and would be grounds for disciplinary action.

### f. **14.11 Harassment/Bullying**

Roncalli stands against harassment/bullying of any sort. For obvious reasons, both biblical and Catholic, harassment/bullying violates our mandate not only to love one another, but in all circumstances to accept one another despite our differences. When these violations are expressed openly in language or behavior, they are reprehensible. Roncalli will not allow behavior that mocks, diminishes or impugns the dignity or integrity of any person or group. No racist, sexist or homophobic expression, language or behavior will be tolerated.

**Harassment/bullying includes but is not limited to the following:**

1. Verbal Harassment/bullying
2. Physical Harassment/bullying
3. Visual Harassment/bullying
4. Sexual Harassment/bullying

Any incident of harassment/bullying/intimidation should be communicated to an administrator, counselor or social worker at Roncalli. All reports about harassment/bullying/intimidation will be taken seriously and investigated thoroughly. Any student found in violation of this policy will face serious disciplinary consequences up to and including expulsion. Any student filing false or frivolous charges or making frivolous accusations will face similar consequences.

NOTE: Roncalli recognizes that any form of harassment/bullying can take place through digital media including but not limited to e-mails, blogs, web sites, text messages, social media, etc… Any incidents involving technology are subjected to the same punishments as if they had occurred in person.

### g.  14.12 Threatening Behavior

At Roncalli, all threats of any kind are taken very seriously. Whether personal threats directed at some particular individual, threats pointed toward some group or faction within the school or certainly a general threat against the whole school (i.e. harm or danger implicit in a bomb scare,) those menacing gestures or statements will be dealt with immediately. Depending on the severity, scope and circumstance of such an event, a student (or students) responsible for any scenario involving these kinds of threatening behaviors will be subject to suspension/expulsion and that student (or students) could face criminal charges.

### h.  14.13 Anti-Hazing Policy

In accordance with recommendations of the National Federation of High Schools (NFHS) and the Indiana High School Athletic Association (IHSAA), Roncalli High School has in place the following anti-hazing policy:

**Purpose:** The purpose of this policy is to maintain a safe learning environment that is free from hazing for students and staff members. Hazing activities of any type are inconsistent with the educational goals of Roncalli High School and are prohibited at all times. This policy applies to hazing behavior that occurs on or off school property during and after school hours.

**General Statement of Policy:** No student, teacher, administrator, or other school employee, or volunteer shall plan, direct, encourage, aid, engage in, permit, condone or tolerate hazing. Roncalli High School will investigate all complaints of hazing and will discipline or take appropriate action against any student, teacher, administrator, or other school employee, or volunteer who is found to have violated this policy. Upon completion of the investigation, Roncalli will take appropriate action. Such action may include, but is not limited to, warning, suspension, remediation, termination or expulsion.

**Definition:** "Hazing" means committing an act against a student, or coercing a student into committing an act, that creates a substantial risk of harm, embarrassment or humiliation, in order for the student to be initiated into or affiliated with a student organization, or for any other purpose.

**Reporting Procedures:** Any person who believes he or she has been the victim of hazing or any person with knowledge or belief of conduct which may constitute hazing shall report the alleged

acts immediately to an administrator, counselor or social worker at Roncalli. Teachers, administrators, other school employees as well as volunteers shall be particularly alert to possible situations, circumstances or events that might include hazing. Any such person who receives a report of, observes, or has other knowledge or belief of conduct which may constitute hazing shall inform an Administrator or the Dean of Students immediately.

**Reprisal:** Roncalli will take appropriate action against any student, teacher, administrator or other school employee, or volunteer who retaliates against anyone who makes a good faith report of hazing, or who provides information, assists or participates in an investigation or hearing about a hazing incident. Retaliation includes, but is not limited to, any form of intimidation, reprisal or harassment.

### i.   **14.19 Civil Law**

Civil laws are strictly enforce by the school authorities.

### j.   **14.22 Technology/Internet Etiquette**

Posting information in a social media and/or public forum is the responsibility of the user. If the school becomes aware that a student has posted something that is derogatory to themselves, other students, teachers, the school or others, or indicates that they are engaging in illegal or immoral activities or harassment of others, they will be subject to school discipline which could include suspension and/or expulsion from school.

### k.   **16.0—16.6 Disciplinary Action; Referral, Detention, Saturday School, Suspension, Probation, Exclusion**

At Roncalli, all regulations are designed to foster orderly operation of the school and mature development of the student. All Roncalli students must realize that their conduct, no matter time or place, reflects both upon their personal dignity and the dignity of their fellow students. Consequently, student conduct at any time not in keeping with the guidelines of the educational philosophy and objectives of Roncalli High School is a discredit to the individual and to other students, faculty and administration. Any conduct unbecoming a Roncalli student is considered a breach of discipline and exposes the student to the imposition of an appropriate penalty. Hence, it is the responsibility of each student to know and follow the guidelines set down herein. The gravity of penalties will be determined by the seriousness of the offense and its attendant circumstances.

### l.   **16.7 Expulsion**

This is the final exclusion of a student from Roncalli High School. A student may be expelled in a given case for a single offense depending upon the seriousness of the offense and attendant circumstances. Students can also be expelled or denied readmission for cumulative acts or habitual failure to serve detentions. Should the attitude of a student deteriorate to the point at which other students' opportunities are jeopardized, that student can be denied the privilege of continuing at Roncalli High School. The length of expulsion is at the discretion of the administration.

Some types of conduct recognized as grounds for expulsion are (but not limited to):

- the use of violence, force, noise, coercion, threat, intimidation, fear, passive resistance or other comparable conduct to interfere with the school's purpose or urging others to such conduct.
- harassment and/or bullying.
- causing or attempting to cause physical injury to another person (not in self-defense).
- threatening or intimidating another student to obtain money or other valuables.
- failure to comply with directions given by teachers or other school personnel in a substantial number of instances.
- engaging in any activity forbidden by Indiana law.
- repeated violation of rules.

### m. **19.1 Athletic Statement**

This athletic handbook is designed to provide information to both athletes and their parents (or guardians) of the program elements, including specific rules and regulations, that have helped develop the rich tradition of athletic competition at Roncalli High School. Participation in high school athletics is a privilege that carries with it varying degrees of honor, respect, responsibility and sacrifice. Since competition is a privilege and not a right, those who choose to participate will be expected to follow the Code of Conduct established by the administration and other specific coaches' rules for their sport. Student-athletes represent their school, family and community. It is the athletes' duty to conduct themselves in a dignified and respectable manner.

### n. **19.2 Athletic Philosophy**

The goal of the Roncalli High School Athletic Department is to provide the best opportunities for its student-athletes to excel in teamwork, sportsmanship, self-discipline and moral character. The purpose is to provide each participant with experiences that will be positive and memorable. This will help him/her to develop the capacity for commitment to a cause, acceptance of responsibility and loyalty towards any chosen endeavor.

### o. **19.3 Athlete Defined**

The Roncalli athlete is defined as, and includes, all young men and women who represent a Roncalli team that engages in either interscholastic (IHSAA) or club sports competition. This includes all participants, managers, and cheerleaders.

### p. **19.5 Weight Room**

The weight room is available for use by teams after school with the permission of the Athletic Director (or designee). No student shall use the weight room facilities without adult supervision. Weight room guidelines must be followed or use of privileges may be suspended.

q. **19.8 Code of Conduct Statement**

The following Roncalli athletic rules are established in conjunction with the Indiana High School Athletic Association Constitution which states:

> "Contestants' conduct, in or out of school, shall be such as: 1) not to reflect discredit upon their school or the IHSAA or, 2) not to create a disruptive influence on the discipline, good order, moral or educational environment in a school. It is recognized that Principals, by the administrative authority vested in them by their school corporation, may exclude such contestants from representing their school."

r. **19.9 Enforcement of the Code of Conduct**

The Principal (or designee) shall enforce all rules and regulations as described in the Code of Conduct for athletes. All rules regarding behavior and/or training as outlined in IHSAA regulations apply. The code will be reinforced by the coach of each sport during the year. Any alleged violation of the Code shall be reported first to the Principal (or designee) and Athletic Director.

s. **19.10 Code of Conduct for Athletes**

Roncalli High School is not asking its athletes to make sacrifices. Sacrifices imply giving up good things. We are asking our athletes to do the opposite. Live clean, think clean and do those things that allow each student athlete to have a positive influence on not only their own lives but also those of their team members. All Roncalli athletes are expected to comply with the standards of our athletic code of conduct and school rules.

- The good of the team is first and foremost. In sports where individuals can advance, after team elimination, he/she then becomes most important. No player(s) will ever employ tactics in violation of rules to gain an undeserved advantage.
- All players will devote themselves to being a true student/athlete.
- Specific team rules may be set forth by the coach of each sport team. These rules, and the penalties for breaking them, will be made known to the athletes and their parents by the coach at the parent meeting conducted at the beginning of that sport's season.
- All students athletes are expected to be in compliance with all other school rules outlined within this handbook. Any athlete in violation of established Roncalli High School student rules such as truancy, suspension, classroom disruption, etc. will be disciplined according to those rules.
- Athletes shall conduct themselves as good citizens within the community. The following disciplinary actions will be enforced:

Any athlete found by the administration to be involved in any form of disrespect, vandalism or theft are subject to the following:

- FIRST OFFENSE: Will result in automatic suspension from the athletic team for 25% of

the current/future season contests (Carry Over Rule).
● SECOND OFFENSE: Suspension from athletics for one calendar year.
● THIRD OFFENSE: Suspension from athletics for one calendar year.
● Any athlete charged with a misdemeanor offense may be subject to an athletic suspension for
25% of the current/future team season contests (Carry Over Rule). This decision will be made by
the administration pending an investigation of the incident. A second or succeeding offense will
result in athletic suspension for one calendar year from the date of the infraction.
● Any athlete charged with a felony offense will be suspended immediately from all athletic
participation pending further investigation by school officials.

**\*\*\*NOTE: The administration in conjunction with the discipline board have the right to levee harsher penalties including expulsion from school for any of the offenses to the Code of Conduct for Athletes.**

13.     Despite the existence of Defendants' written policies fostering Christian values and condemning bullying, harassment, abuse, assault, discrimination and hazing, the Defendants failed to implement their own policies and address the bullying, harassment, abuse, assault, discrimination and harassment that occurred regularly at their school in 2019. Defendants' failure to implement the foregoing policies supports a reasonable inference that they either condone such conduct or are deliberately indifferent to its occurrence.

14.     One of the reasons that a hostile education environment is allowed to exist at Roncalli is because of their failure to properly train their employees on the implementation and enforcement of their own written policies, resulting in their employees' ignorance of these policies. The need for schools to train their employees on such policies is self-evident, even obvious.

15.     Defendants' failure to train their employees on these policies constitutes deliberate indifference to JOHN DOE's civil rights, specifically including but not limited to his right to be educated in an environment which is not hostile.

16.     Defendants' deliberate indifference to the need to train their employees on these policies resulted in the deprivation of JOHN DOE's civil rights.

17.     Defendants' custom or practice of not training their employees on their own written policies and the failure to take appropriate steps to address discrimination, bullying, harassment, abuse and hazing at Roncalli amount to an official policy.

18.     JOHN DOE is a bright, gregarious, likeable, and social young man who looked up to, adored, and idolized the Roncalli varsity football players and loved participating in the Roncalli football program. Unfortunately, several varsity football team players leveraged their positions of power and exploited JOHN DOE's disability-related vulnerabilities to discriminate, bully, harass, abuse, and haze him. Despite the Defendants' actual knowledge that JOHN DOE was discriminated against, bullied, harassed, abused, and hazed by the varsity football team, and of its harmful effects on JOHN DOE, Defendants disregarded the conduct and failed to take appropriate measures to prevent or stop the bullying or discipline the perpetrators.

19.     The other students' intentional or willful misconduct directed toward JOHN DOE meets Defendants' definitions of harassment, bullying, abuse, discrimination, and hazing, as well as applicable federal and state law definitions.

20.     At all relevant times, Defendants had lawful disciplinary authority over the perpetrators because they were students on Defendants' property, and varsity athletes, and the sanctionable conduct occurred on school property during school and extra-curricular hours when said locations were required to be monitored by Defendants' faculty and staff. Therefore, Defendants exercised substantial control over the circumstances which led to the harassment and/or the conditions where the harassment was perpetrated.

21.     JOHN DOE was targeted for bullying, discrimination, hazing, harassment, and abuse, because he has Down Syndrome. As a result, he was perceived and treated by other students and Defendants' employees as "different."

22.     Defendants' custom and practice of failing to enforce, or selectively enforcing, their policies and procedures sent a message that athletes and others in a position of power will not face serious consequences. These failures fostered a culture of passivity and tolerance on the part of the staff which emboldened students to engage in bullying, abuse, harassment, discrimination, and hazing of vulnerable students, like JOHN DOE, because they knew they could get away with it.

23.     On or about September 9, 2019, a Roncalli student and varsity football player videotaped JOHN DOE's genitals while he was urinating in the toilet at "Blockhouse," the Roncalli football locker room, on a smartphone and posted it to a social media platform.

24.     The student who took the video showed the video to other football players in front of JOHN DOE and, together, the boys laughed at the video of JOHN DOE's exposed genitals at JOHN DOE's expense.

25.     JOHN DOE did not consent to having his exposed genitals being videotaped or posted to the internet.

26.     JOHN DOE told L.W. of the events the same evening and L.W. immediately notified a member of the Roncalli teaching staff of the bullying and sexual assault events via e-mail.

27.     The Roncalli staff member notified the Dean of Students, Tim Crissman ("Dean Crissman"), about the bullying and sexual assault events.

28.     Upon learning of the events, Dean Crissman met with the student who took the video and assisted the student in deleting it from the smartphone device it was taken on in violation of Defendants' policies and procedures and federal and Indiana law.

29.     Upon information and belief, the student received one after-school detention for his actions in taking and/or transmitting the video. The student was not precluded from participating in any football-related practice, games, or events. No protections or accommodations were implemented to ensure JOHN DOE's safety, dignity, or personal autonomy at school or in the Blockhouse.

30.     Roncalli did not have a Title IX coordinator. No Roncalli staff member contacted JOHN DOE to discuss the sexual abuse and offer supportive measures. No supportive measures were available to JOHN DOE and no considerations were made for JOHN DOE's wishes regarding supportive measures in the aftermath of the assault. Roncalli's staff failed to explain to JOHN DOE the process for filing a formal complaint based on the sexual assault he experienced.

31.     On September 20, 2019, L.W. and her husband met with Dean Crissman and JOHN DOE's teacher to further discuss the bullying and sexual assault events. At this meeting Dean Crissman admitted he was required to watch the video and he failed to do that. Dean Crissman requested time to investigate further.

32.     On or about September 24, 2019, Dean Crissman called L.W. and confirmed at least two other students did view the video of JOHN DOE's exposed genitals while urinating before it was deleted. He apologized again for failing to do his job by not watching the video. The students were not precluded from participating in any football-related practice, games, or events. Again, no protections or accommodations were implemented to ensure JOHN DOE's safety, dignity, or personal autonomy at school or in the Blockhouse.

33.     Defendants' employees and agents, including but not limited to, school administrators, teachers, support staff, and the football coach staff, knew JOHN DOE was bullied and sexually assaulted by members of the football team at Blockhouse and failed to take reasonable measures to prevent it or stop it from happening.

34.     On Friday, September 27, 2019, the night of the Roncalli homecoming football game, JOHN DOE was again bullied, abused, harassed, and hazed in Blockhouse by members of the varsity football team who retaliated against him for disclosing the previous bullying, harassment, hazing, and abuse. He was verbally threatened, coerced, and forced to perform sexual, embarrassing and humiliating acts against his will as part of his affiliation with the Roncalli football program. The events were recorded on a cell phone by a member of the team who subsequently deleted the footage.

35.     On October 2, 2019, L.W. first learned of the September 27, 2019 bullying, hazing, discrimination, abuse, sexual assault and harassment when she received an anonymous typewritten letter in the mail that said:

> I wanted to make you aware of an incident my son saw last Friday 9/27/2019. My son walked in to the blockhouse and saw JOHN DOE licking and sucking [Varsity Football Player]'s nipples. His friends were laughing and encouraging him. There was another player nearby with his shirt off and looked like he was going to be next.
>
> My son fears he will be retaliated against for speaking up. I promised him I would not give his name—but I have reported this to the school. This behavior is despicable—and should not be tolerated. It shouldn't matter that it is the coaches son—and I fear the school may not hold him accountable for his bullying. That's why I wanted to make you aware as well.

36.     JOHN DOE substantiated the events described in the letter and identified the student-athletes involved using the Roncalli yearbook.

37.     On October 3, 2019, L.W., filed a report with the Indianapolis Metropolitan Police Department regarding the incidents and kept JOHN DOE home from school. The Defendants had not reported the events to the police.

38.     On October 4, 2019, Dean Crissman left L.W. a voicemail indicating that the school had become aware of an incident of JOHN DOE "being treated with less respect than he deserved," and that they had investigated and determined it did not occur. Dean Crissman did not provide details of the incident. In the same call, Dean Crissman indicated that JOHN DOE had been interviewed as a part of the incident investigation. This phone call was the first time Roncalli notified L.W. they were aware of a second incident.

39.     During and after the investigation, no protections or accommodations were implemented to ensure JOHN DOE's safety, dignity, or personal autonomy at school or in the Blockhouse.

40.     Defendants did not notify L.W. that when they first learned of the September 27, 2019 bullying, abuse, hazing, sexual assault, and harassment allegation, and JOHN DOE had been interviewed without a parent or guardian present. Defendants further failed to disclose the nature of the allegation to L.W. or J.P. at any point in time.

41.     Defendants failed to report the bullying and sexual assault to the police or Department of Child Services, instead opting to conduct an internal investigation.

42.     On October 7, 2019, L.W. notified Roncalli she was withdrawing JOHN DOE from enrollment at the school.

43.     On October 8, 2019, JOHN DOE provided an interview as part of the police investigation. He voiced fear that the boys involved in the incident would act on their threats and retaliate against him for telling what happened.

44.     On or about October 14, 2019, the Varsity football coach's son, who perpetrated the abuse, bullying and sexual assault on JOHN DOE on September 27, 2019, transferred to another school and was allowed to continue playing football.

45.     On October 21, 2019, L.W. received a second anonymous letter identifying two student-athletes who could identify the people involved in the second incident, including the person who recorded the incident with their cell phone.

46.     The ongoing bullying, harassment, abuse, discrimination, sexual assault and hazing that JOHN DOE experienced at Roncalli were so pervasive and severe that it created a hostile and unsafe environment and instilled in JOHN DOE a fear of his peers and anyone and anything associated with Roncalli.

47.     JOHN DOE has the right to attend school in an environment free from hostility towards persons with disabilities and the hostile environment which he experienced at Defendants' school on multiple occasions deprived him of educational and athletic opportunities and benefits.

48.     JOHN DOE has the right to attend school in an environment free from sexual harassment and the sexual harassment he experienced at Defendants' school on multiple occasions deprived him of educational and athletic opportunities and benefits.

49.     The bullying, harassment, hazing, discrimination, sexual assault, and abuse were more than isolated and sporadic incidents; they were serious, ongoing, and continuous and had the systemic effect of depriving JOHN DOE to educational programs and activities.

50.     Despite L.W.'s emails, telephone calls, and meetings with school administrators and staff during which she expressed concerns over JOHN DOE being bullied and sexually harassed, Defendants' employees failed to follow their own policies and procedures, as well as

Indiana and federal law, to discipline the perpetrators, and to protect and ensure JOHN DOE's safety.

51.     Despite numerous reports, by his mother and others, that JOHN DOE was discriminated against, harassed, bullied, abused, and hazed, Defendants failed to conduct appropriate investigations into any of the reported incidents, disregarded or discounted JOHN DOE's version of the events, and even destroyed video evidence of the events.

52.     Defendants had actual knowledge that harassment of JOHN DOE based on his disability was so severe and pervasive that it created a hostile environment that deprived JOHN DOE of access to their education and athletic programs, activities, and opportunities.

53.     Defendants had actual knowledge that the sexual harassment of JOHN DOE was so severe and pervasive that it created a hostile environment that deprived JOHN DOE of access to their education and athletic programs, activities, and opportunities.

54.     Defendants' deliberate indifference to the harassment, bullying, abuse, discrimination and hazing of JOHN DOE was demonstrated by its actions (and inaction), which were clearly unreasonable in light of the known circumstances.

55.     JOHN DOE has suffered significant physical, emotional, and psychological injuries as a result of the bullying, abuse, hazing and harassment he endured at Roncalli. He has and will continue to receive medical and mental health treatment for his injuries.

56.     L.W. and J.P. have suffered the loss of their child's services and consortium, emotional trauma, endured significant medical expenses, lost time and wages from taking their child and themselves to numerous medical and mental health appointments, incurred substantial legal expenses, and will continue to suffer such losses in the future.

## IV.    LEGAL ALLEGATIONS

### COUNT I
### CLAIMS UNDER SECTION 504 OF THE REHABILITATION ACT OF 1973

57.    Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if set forth herein.

58.    This claim is brought pursuant to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 et seq. ("Section 504") and its implementing regulations, 34 C.F.R. § 104 et seq.

59.    Section 504 guarantees JOHN DOE the right to participate, along with nondisabled students, in academic, non-academic, and extracurricular activities and services to the maximum extent appropriate to meet his needs. 34 C.F.R. § 104.34(a), (b).

60.    JOHN DOE is a "qualified individual with a disability" as defined in Section 504; 29 U.S.C. § 705, 34 C.F.R. §104.3.

61.    At all relevant times, Defendants received federal financial assistance, including but not limited to under the National School Lunch Program, special needs program, Indiana Choice/school voucher program and/or other Federal Education programs.[5]

62.    The Archdiocese has an agreement with the United States Department of Agriculture ("DOA") to provide free and low-cost breakfasts, to children at their member schools, including Roncalli. In such agreements, there is a requirement that the Diocese assures that its member schools will follow federal standards, including and especially the duty not to discriminate based upon disability, pursuant to Section 504; 34 C.F.R. §104.4; §104.39.

---

[5] Based on current data, 27.9% of Roncalli's student population is compromised of students who are economically-disadvantaged or have a disability. Both factors would entitle the school to receive federal funding. https://inview.doe.in.gov/schools/1000003320/population

63.     JOHN DOE was a "parentally-placed private school child with disabilities" at Roncalli as defined by 34 C.F.R. § 300.130.

64.     Roncalli received federal funding under the Individuals with Disabilities Education Act (IDEA) for the special education and services it provided to JOHN DOE, and other qualifying students, as required by 34 C.F.R. § 300.132 and 34 C.F.R. § 300.133.

65.     Defendants operated their program or activity on the basis of generalizations, assumptions, prejudices or stereotypes about JOHN DOE's disability and how it affects him.

66.     Student-athletes' bullying of JOHN DOE constitutes harassment on the basis of his disability, which interfered with his right to receive an education in an environment free from discrimination.

67.     Defendants knew, or were deliberately indifferent to knowing, that JOHN DOE was being harassed on the basis of his disability,yet failed to take proper steps to investigate or otherwise determine what occurred, including deleting evidence of the occurrences.

68.     Defendants knew, or were deliberately indifferent to knowing, that JOHN DOE was being subjected to discriminatory harassment which created a hostile environment sufficiently serious to interfere with or limit JOHN DOE's ability to participate in or benefit from Defendants' programs or activities, namely, their education and athletic program.

69.     Despite this knowledge, Defendants failed to take prompt and effective steps to end the harassment, eliminate the hostile environment, prevent its recurrence and remedy its effects.

70.     Defendants failed to implement their own policies and procedures to end the harassment, eliminate the hostile environment, prevent its recurrence and remedy its effects.

71.     Defendants discriminated against JOHN DOE solely by reason of his disability in violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 et seq. Specifically,

Defendants subjected him to a hostile educational environment and deprived him of the opportunity to attend school and participate in their programs or activities.

72.     Defendants excluded JOHN DOE from participation in, denied him the benefits of, or otherwise subjected him to discrimination under a program or activity which receives federal financial assistance in violation of 34 C.F.R. § 104(a).

73.     By allowing a hostile educational environment to exist at school, Defendants discriminated against JOHN DOE because of his disability.

74.     Defendants acted with discriminatory intent or deliberate indifference towards JOHN DOE.

75.     Nondisabled persons receive the benefits or services for which JOHN DOE is otherwise qualified, but JOHN DOE, solely by reason of his disability, was excluded from, denied participation in or denied the benefits of attending school by Defendants or was otherwise subjected to discrimination.

## COUNT II
## CLAIMS UNDER TITLE IX

76.     Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if set forth herein.

77.     This claim is brought pursuant to Title IX, 20 U.S.C. § 1681, et seq. (Title IX).

78.     At all relevant times, Defendants received federal financial assistance, as defined by 44 C.F.R. § 19.105, including but not limited to under the National School Lunch Program,

special needs program, Indiana Choice/school voucher program and/or other Federal Education programs.[6]

79.     The Archdiocese has an agreement with the United States Department of Agriculture ("DOA") to provide free and low-cost breakfasts, to children at their member schools, including Roncalli. In such agreements, there is a requirement that the Diocese assures that its member schools will follow federal standards, including and especially the duty not to discriminate based upon disability, pursuant to Section 504; 34 C.F.R. §104.4; §104.39.

80.     JOHN DOE was a "parentally-placed private school child with disabilities" at Roncalli as defined by 34 C.F.R. § 300.130.

81.     Roncalli received federal funding under the Individuals with Disabilities Education Act (IDEA) for the special education and services it provided to JOHN DOE, and other qualifying students, as required by 34 C.F.R. § 300.132 and 34 C.F.R. § 300.133.

82.     Defendants had knowledge that, at Blockhouse, JOHN DOE was sexually assaulted and the recipient of unwelcome sexual conduct so severe, pervasive, and objectively offensive that it denied him equal access to the Defendants' educational program and football program.

83.     JOHN DOE's sexual assault and bullying, harassment, hazing, and abuse was reported to Defendants.

84.     Defendants were deliberately indifferent to the bullying, sexual abuse, discrimination, hazing, and harassment of JOHN DOE at Blockhouse by members of the varsity football team.

---

[6] Based on current data, 27.9% of Roncalli's student population is compromised of students who are economically-disadvantaged or have a disability. Both factors would entitle the school to receive federal funding. https://inview.doe.in.gov/schools/1000003320/population

85.     Defendants exercised substantial control over the Blockhouse and the environment in which the harassment occurred.

86.     Defendants failed to employ a Title IX coordinator.

87.     Defendants failed to promptly contact JOHN DOE to discuss the abuse and offer supportive measures.

88.     Defendants failed to explain supportive measures were available to JOHN DOE or to consider JOHN DOE's wishes regarding the offered supportive measures.

89.     Defendants failed to explain to JOHN DOE the process for filing a formal complaint.

90.     The sexual molestation of JOHN DOE was a direct result of the hostile environment maintained and perpetuated by Defendants and caused him to be deprived of access to educational opportunities and benefits provided by the school.

91.     Defendants' actions and inactions violate Title IX, 20 U.S.C. § 1681, et seq. (Title IX).

## COUNT III
## NEGLIGENCE AND NEGLIGENCE PER SE

92.     Plaintiffs incorporate by reference all the above related paragraphs with the same force and effect as if set forth herein.

93.     At all relevant times, JOHN DOE was lawfully upon the premises of Defendants' school or athletic facilities.

94.     Defendants owed JOHN DOE common law and statutory duties of reasonable care and supervision of students attending the school and participating in their athletic program, including JOHN DOE.

95.     Defendants owed JOHN DOE a duty to protect him from the reasonably foreseeable actions of others.

96.     Defendants breached these duties, including, but not limited to, as more particularly described below.

97.     Defendants were aware of JOHN DOE being bullied, discriminated against, harassed, hazed and abused in the Blockhouse by members of the varsity football team.

98.     Defendants were aware of JOHN DOE's vulnerability based upon his disabilities.

99.     Despite their actual knowledge of the risk, Defendants failed to protect JOHN DOE from being discriminated against, bullied, harassed, hazed and abused in the Blockhouse on future occasions.

100.    Defendants failed to take reasonable measure to prevent JOHN DOE from being subjected to bullying, harassment, hazing, discrimination, and abuse when he was at school and at athletic practice and events. This failure directly and proximately increased the risk of harm to JOHN DOE and includes failing to supervise students in their charge, failing to devise, implement and enforce appropriate anti-bullying, anti-abuse, anti-discrimination, anti-harassment, and/or anti-hazing policies and procedures, failing to intervene when JOHN DOE was bullied, harassed, discriminated against, abused and hazed, failing to properly investigate reports related to these events, and failing to take appropriate disciplinary action against the perpetrators.

101.    As a direct and proximate result of the Defendants' negligence, Plaintiffs have sustained damages, specifically pain and suffering. Specifically, JOHN DOE suffered physical injuries and emotional and psychological distress and L.W. and J.P. suffered a loss of their son's services and affection and incurred medical expenses on behalf of R.N. as a result.

102.    Defendants knew or should have known that JOHN DOE was being subjected to harassment, bullying, abuse, discrimination and hazing by other students at school. The students who harassed, bullied, abused, discriminated against, and hazed JOHN DOE were subject to Defendants' disciplinary authority.

103.    Defendants' negligence, failure to investigate the harassment, bullying, discrimination, abuse and hazing or JOHN DOE, failure to implement and follow their own policies and procedures, and failure to take disciplinary action against the perpetrators created a hostile environment at school, made JOHN DOE more vulnerable to harassment, bullying, discrimination, abuse and hazing at school and/or caused JOHN DOE to be subject to harassment, abuse, discrimination, bullying and hazing.

104.    To the extent Defendants violated federal and state statutes and such statutory violations proximately caused or contributed to harm JOHN DOE, Defendants are liable for negligence *per se*.

105.    Defendants' negligent acts and/or omissions caused JOHN DOE, personal injury, and distress.

## V.    **PROXIMATE CAUSE**

106.    Each and every, all and singular, of the foregoing acts and omissions, on the part of the Defendants, jointly and severally, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages of Plaintiffs, as set forth herein.

107.    As a result of the Defendants' statutory violations, negligent acts and/or omissions, JOHN DOE has suffered severe and permanent injuries and impairment, including, but not limited to, medical and mental health treatment expenses, severe physical, emotional, and psychological pain and suffering, and will continue to suffer such damages in the future.

108.     As a further direct and proximate result of the Defendants' statutory violations, negligent acts and/or omissions, Plaintiffs, L.W. and J.P. have suffered the loss of their child's services and consortium, emotional trauma, incurred significant medical and mental health expenses, lost time and wages from taking their child and themselves to numerous medical appointments and therapy sessions, incurred substantial legal expenses, and will continue to suffer such losses in the future.

## VI.     <u>RESPONDEAT SUPERIOR</u>

109.     The Defendants are responsible for and as such ratified the acts, omissions and customs of all administrators, personnel, staff, contractors, and agents, in regard to services provided to and on behalf of Plaintiffs, pursuant to the theory of Respondeat Superior.

## VII.     <u>AGENCY</u>

110.     At and during the time of the acts and/or omissions complained of herein, any acts and/or omission committed by an agent, representative or employee of the Defendants occurred within the scope of the actual or apparent authority of such person on behalf of Defendants.

111.     Said Defendants are therefore liable to Plaintiffs for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

## VIII.     <u>DAMAGES</u>

112.     As a direct and proximate result of the occurrence made the basis of this lawsuit, and Defendants' acts as described herein, jointly and severally, Plaintiffs were caused to suffer greatly, and to endure injury, physical, emotional and psychological harm, pain, and illness resulting in damages.

## IX.   <u>RELIEF REQUESTED</u>

113.     As a direct and proximate result of the occurrences made the basis of this lawsuit,

Plaintiffs request the following relief:

     a.  Judgment in their favor against Defendants, jointly and severally;

     b.  Compensatory damages including but not limited to reasonable mental and physical health care expenses past present and future, mental anguish suffered past present and future, various out of pocket expenses related to curing the acts and omission of the Defendants, past, present and future;

     c.  Reasonable attorney fees pursuant to 29 U.S.C. § 794a(b) and 42 U.S.C. § 1988(b);

     d.  Costs of this action; and

     e.  All other relief reasonable in the premises.

## X.   <u>PUNITIVE DAMAGES</u>

114.     The acts and omissions of the Defendants shock the conscious and satisfy the

criteria for punitive damages.

               Respectfully submitted,

               GARAU GERMANO, P.C.

               /s/ Ashley N. Hadler
               Ashley N. Hadler, #29939-49
               Attorney for Plaintiff

GARAU GERMANO, P.C.
3710 Washington Boulevard
Indianapolis, Indiana 46205
(317) 822-9530 Phone
(317) 822-9531 Fax
ahadler@g-glawfirm.com

**REQUEST FOR JURY TRIAL**

Plaintiffs, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

GARAU GERMANO, P.C.

/s/ Ashley N. Hadler
Ashley N. Hadler, #29939-49
Attorney for Plaintiff

GARAU GERMANO, P.C.
3710 Washington Boulevard
Indianapolis, Indiana 46205
(317) 822-9530 Phone
(317) 822-9531 Fax
ahadler@g-glawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 21, 2022, I electronically filed the foregoing document

using the Court's electronic filing system. A copy of this filing has been served through the

Court's electronic filing system upon the following counsel of record:

Michael C. Terrell                      Andrew S. Murphy
**TAFT STETTINIUS & HOLLISTER LLP**      **TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500          111 E. Wacker Dr., Suite 2800
Indianapolis, IN 46204                  Chicago, Illinois 60601
mterrell@taftlaw.com                    amurphy@taftlaw.com

/s/ Ashley N. Hadler
Ashley N. Hadler